The Honorable Magistrate Judge Theresa L. Fricke

# THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| JOSHUA FREED, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 2:20-cv-00599-TLF |
| | ) | |
| vs. | ) | |
| | ) | |
| JAY INSLEE, Governor of Washington, in his Official capacity, | ) ) ) | NOTE ON MOTION CALENDAR April 29, 2020 |
| | ) | |
| Defendant/Respondent. | ) ) | ORAL ARGUMENT REQUESTED |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF GRANTING
TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

1

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238

**TABLE OF CONTENTS**

**I. Introduction** ................................................................................................................... 3

**II. Factual Background** ..................................................................................................... 5

    A.    Gathering with others for prayer and Scripture reading is central to the practice of their faith for many Christians. ............................................................................................... 5

    B.    Mr. Freed has a sincerely held belief that he must meet in prayer and Bible study with fellow believers. ....................................................................................................................... 5

    C.    Prohibition of All Spiritual Meeting ................................................................... 8

**III. Argument and Authorities** ......................................................................................... 10

    A.    Joshua Freed is Substantially Likely to Succeed on the Merits of his Free Exercise Claim, his Free Speech Claim, and his Freedom of Assembly Claim. ................................ 10

        1.    Joshua Freed is Likely to Succeed on the Merits of his Free Exercise Claim under the U.S. Constitution. ................................................................................................ 10

        2.    Mr. Freed is Likely to Succeed on the Merits of his Free Speech Claim under the U.S. Constitution. ................................................................................................ 13

        3.    Mr. Freed is Likely to Succeed on the Merits of his Freedom of Assembly Claim under the U.S. Constitution. ................................................................................. 13

    B.    Enforcement of the Order Will Inflict Irreparable Injury on Joshua Freed if the TRO is Not Issued. ............................................................................................................... 14

    C.    The Balance of the Equities Tips in Mr. Freed's Favor. .................................... 15

    D.    The Public Interest in Protecting the Constitutional Rights to Free Exercise of Religion, Assembly, and Speech Requires Entry of a TRO. ................................................... 16

**IV. Conclusion** ................................................................................................................. 16

PLAINTIFF'S MEMORANDUM  
IN SUPPORT OF GRANTING  
TEMPORARY RESTRAINING ORDER  
CASE NO.: 2:20-cv-00599-TLF

2

The North Creek Law Firm  
12900 NE 180th Street #235  
Bothwell, Washington 98011  
(425) 368-4238

Plaintiff Joshua Freed moves for a temporary restraining order, and in support thereof, states as follows:[1]

## I. Introduction

For hundreds of years, people have come to America in a quest for religious freedom. Stretching back to the formation of colonies like Pennsylvania and Rhode Island, where citizens could practice religion in a way that would not be impeded by the government, this basic freedom sought by so many colonists was subsequently enshrined in the constitutions of the states and, most importantly, in the First Amendment to the United States Constitution. "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

Under the state Stay Home – Stay Healthy Proclamation, GP 20-25, Defendant Governor Jay Inslee announced what would previously have been unthinkable in a nation like the United States—that he was prohibiting spiritual gatherings of any kind regardless of size or precautions taken. This gubernatorial ban is backed by threats of criminal penalties. The purported justification for this astounding power grab is the COVID-19 pandemic, despite the fact that Mr. Freed intends to conduct his meetings consistent with CDC and applicable state and local health guidelines. The meetings requested through the Temporary Restraining Order are to involve only a single other person meeting to pray and read Scripture with Joshua Freed. They will take place outdoors, with social distancing at all times followed, hygiene precautions taken, and the visitor bringing his or her own seat and removing it upon leaving. Further, the proposed meetings will

---

[1] Mr. Freed incorporates and adopts by reference each and every allegation in his Original Complaint.

be under an hour in duration. Each person will wear PPE. Mr. Freed will only meet with one person each day. This manner of meeting adheres to and goes well beyond the Center for Disease Control and Prevention ("CDC") guidelines. Despite this, under GP 20-25 such a meeting is subject to criminal penalties. At the same time, the state permits drive-in restaurant pick-ups to continue. Grocery shopping, media activities, and marijuana and vape sales (in the midst of respiratory pandemic) are also not ordered to cease; and some construction work will resume with the later reopening of recreational boating, fishing, and golfing to follow.

Defendant's targeting of religious adherents from gathering in a manner consistent with governmental social distancing guidelines, while permitting similar (and at times even more intimate) social interaction to continue unabated in some retail and commercial establishments, flies in the face of the First Amendment of the U.S. Constitution. A temporary restraining order is thus proper to protect Plaintiff's religious freedom. Without such, Mr. Freed will forever lose the opportunity to support his fellow believers during this time of challenge and uncertainty in accordance with his sincerely held religious beliefs. A temporary restraining order is appropriate because Mr. Freed is likely to succeed on the merits of his claim since Defendant's conduct clearly violates the First Amendment of the U.S. Constitution; he would suffer irreparable injury by his constitutional rights being deprived; the balance of equities weighs in Mr. Freed's favor as holding a small, outdoor meeting with one other person would not cause harm to anyone because it would comport with the CDC guidelines on such gatherings; and the public interest weighs in favor of protecting constitutional rights.

Mr. Freed respectfully requests that this Court grant a temporary restraining order so he can freely exercise his religion.

## II. Factual Background

**A. Gathering with others for prayer and Scripture reading is central to the practice of their faith for many Christians.**

Gathering together in prayer and spiritual reading is central to the practice of the Christian faith for many Christians. The Bible states that "where two or three are gathered together in [the Lord's] name, there am I in the midst of them." Matthew 18:20 (King James Version). Therefore, the practice of praying and reading Scripture with others holds a place of special significance in the Christian faith.

For more than 2,000 years, Christians have gathered physically throughout the year in observance of this tradition, and the physical gathering of the body of Christ is central to religious worship for many Christians. Indeed, the Greek word translated "church" in our English versions of the Christian scriptures is the word "ekklesia," which literally means "assembly." A.T. ROBERTSON, A GRAMMAR OF THE GREEK NEW TESTAMENT IN THE LIGHT OF HISTORICAL RESEARCH (3d ed. 1919). Praying with others is of great importance to many believers who come together in support of one another, especially in times of need.

**B. Mr. Freed has a sincerely held belief that he must meet in prayer and Bible study with fellow believers.**

Joshua Freed is a practicing Christian whose faith has inspired him to serve others in a number of capacities. He is the Founder of Globe Leadership, which teaches young people the importance of servant leadership. He has also participated in dozens of mission and relief trips to both Kenya and the Philippines over the past 21 years. As part of these trips, he helped to build 150 homes in response to an earthquake, assisted in starting health care clinics, helped to build

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF GRANTING
TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

5

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238

residence halls for deaf students, aided in constructing day care facilities and dug wells to provide clean water to communities in developing nations.

Mr. Freed believes that his faith is meant to be practiced in community. He believes that Jesus instructed his followers to pray with one another and gather for communal worship. Such practices, Mr. Freed sincerely believes, are necessary to his practice of the Christian faith.

For Mr. Freed, as for many Christians, meeting with others for spiritual conversation is of particular importance in furthering his life of faith and that of those in his faith community. Mr. Freed believes that a central part of the practice of the faith is giving support and strength to one another, and one crucial aspect of doing so is worshipping in the same physical space.[2] Indeed, the Christian scriptures exhort that believers "not neglect[t] to meet together." Hebrews 10:25 (ESV). Mr. Freed has a sincerely held religious belief that he must continue to meet with members of his Bible Study as part of his Christian faith.

Mr. Freed and his wife have been holding a Bible Study in their home weekly for the past two and a half years. Between 25 and 50 participants attended the Bible Study and the mean age is under 30 years. None of the Bible study participants are known to have COVID-19 cases. Mr. Freed has made efforts to transform the Bible Study to remote meetings. However, these virtual meetings have proven not to serve as a workable substitute to in-person meetings, due to the lack of privacy and intimacy, and to the technological glitches they occasion.

---

[2] This belief involves physical proximity that cannot be fully expressed online or on the phone, as Fr. Henri Nouwen explained, "Hospitality becomes community as it creates a unity based upon the shared confession of our basic brokenness and upon a shared hope. This hope in turn leads us far beyond the boundaries of human togetherness to the One who calls all people away from the land of slavery to the land of freedom.  It belongs to the central insight of the Judeo-Christian tradition, that it is the call of God that forms the people of God." Henri Nouwen, THE WOUNDED HEALER: MINISTRY IN CONTEMPORARY SOCIETY (1st ed. 1979).

Mr. Freed is deeply committed to ensuring that any physical gathering conforms to the guidelines issued by the CDC for community and faith leaders to ensure the safety and well-being of participants. *See* Centers for Disease Control, *Interim Guidance for Administrators and Leaders of Community- and Faith- Based Organizations to Plan, Prepare, and Respond to Coronavirus Disease 2019 (COVID-19)*, https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/guidance- community-faith-organizations.html. Mr. Freed seeks to meet one-on-one with participants outdoors, with only one meeting per day, following the CDC Guidelines and with additional safeguards in place: 1) Attendee will be advised to perform temperature checks prior to meeting, 2) Social distancing of at least 6 feet between individuals will be practiced, 3) High risk individuals will not attend in-person meetings, 4) Attendee will be advised to bring his or her own PPE, including a mask and gloves, 5) Attendee will not engage in hand shaking or physical contact. *See* Affidavit of Mr. Freed, attached hereto as Exhibit A.

Mr. Freed will continue to attempt to offer virtual meetings, but seeks to have the legal option to have one-on-one meetings outdoors with members of his Bible study, following all applicable guidance from federal, state, and local authorities without being subject to penalties or punishment.

In-person prayer has special significance for Christians, based in Biblical exhortations. Joshua Freed seeks to exercise his faith through meeting in-person subject to all applicable health guidelines and with the additional safety protocols set forth above. This will provide strong protection for the health of the community and others by preventing potential contact and ensuring against the transmission of disease through the meetings.

### C. Prohibition of All Spiritual Meeting

On February 29, 2020, Jay Inslee, in his official capacity as the Governor of Washington, signed Proclamation 20-05 instituting a state of emergency in all counties of Washington due to the COVID-19 outbreak. On March 23, the Governor issued Proclamation 20-25 prohibiting spiritual gatherings of any size due to the COVID-19 outbreak. *See* Ex. 1. The Proclamation held that "[a]ll people in Washington State shall immediately cease participating in all public and private gatherings and multi-person activities for social, spiritual and recreational purposes, regardless of the number of people involved, except as specifically identified herein." It went on to specify that prohibited gatherings include "community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." GP 20-25, at 4 (March 23, 2020), governor.wa.gov/sites/default/files/proclamations/20-25%20Coronovirus%20Stay%20Safe-Stay%20Healthy%20%28tmp%29%20%28002%29.pdf Further, frequently asked questions on the order state: "Can I go to my place of worship? No. Governor Inslee's directive prohibits all gatherings, public and private." Ex. 4. Excluded from the prohibition on gatherings are a number of businesses deemed essential, these include some retail, including cannabis retail, grocery establishments, media, and a number of professional services. GP 20-25 Appendix, at 1, 4, 9 (March 23, 2020), https://www.governor.wa.gov/sites/default/files/WA%20Essential%20Critical%20Infrastructure%20Workers%20%28Final%29.pdf

Violators are subject to criminal penalties under RCW 43.06.220(5). Thus, any kind of meeting for spiritual guidance or support without risk of criminal penalty is foreclosed. On April

PLAINTIFF'S MEMORANDUM IN SUPPORT OF GRANTING TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

8

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238

2, 2020, the Governor extended the provisions of the GP 20-25 through May 4, 2020 with GP 20-25.1. Ex. 2.

In response to a protest on April 19, 2020, in which thousands gathered to protest GP 20-25, the Governor stated that he welcomed First Amendment activity, and followed up later with the statement, "I support free speech." Nonetheless, the total prohibition of spiritual gatherings remains in effect. On April 24, 2020, Governor Jay Inslee issued an Addendum to Proclamation 20-25 to begin a phased reopening of the State of Washington. This Proclamation allows some construction activities to resume provided social distancing and other enumerated protocols are followed.  *See* https://www.governor.wa.gov/sites/default/files/proclamations/20-25%20Addendum%20Implementation%20of%20Phase%201%20Construction%20Restart%20Proclamation.pdf.  However, despite the beginning of a phased reopening allowing outdoor construction work subject to implementation of the requisite protocols, the blanket prohibition on spiritual gatherings of any size is still in full effect. On April 27, 2020, Governor Inslee issued GP 20-25.2 which extended the restrictions from GP 20-25 through May 4th 2020 and confirmed that a variety of outdoor recreational activities, including hunting, fishing, and golfing will be open as of May 5th, 2020 subject to social distancing and hygiene requirements. GP 20-25.2 (April 27, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-25.2%20Coronavirus%20Stay%20Home%20Amend%20%28tmp%29%20%28with%20links%29.pdf. Nonetheless all spiritual gatherings of more than one outside of a household remain forbidden and no mention of lifting their prohibition has been made.

The United States Attorney General William Barr has expressly warned against the unconstitutionality of targeting protected First Amendment activity, specifically religious

exercise, in orders related to COVID-19. He explained that religious conduct cannot be restricted in ways that do not apply to comparable secular conduct. *See* Ex. 5.

Governor Inslee has prohibited any gatherings for spiritual purposes outside of members of a household no matter the size or what precautions are taken to eliminate the risk of such meetings spreading the novel coronavirus. Thus, Governor Inslee has criminalized any in-person practice of religious devotion between non-household members. The criminal penalties may hold even if such a meeting abides by the social distancing and hygiene guidelines provided by the CDC. Governor Inslee's Proclamation. This directly targets religious gatherings and is in contravention of the federal Constitution.

### III. Argument and Authorities

In determining whether to grant a temporary restraining order ("TRO"), courts must consider four factors: "(1) that [Plaintiff] is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of the [TRO], (3) that the balance of equities tips in his favor, and (4) that [a TRO] is in the public interest."*Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011)(citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)). For the reasons explained below, Joshua Freed satisfies each of these requirements and is accordingly entitled to the requested relief.

  A. **Joshua Freed is Substantially Likely to Succeed on the Merits of his Free Exercise Claim, his Free Speech Claim, and his Freedom of Assembly Claim**.

  1. *Joshua Freed is Likely to Succeed on the Merits of his Free Exercise Claim under the U.S. Constitution.*

Defendant's blanket prohibition on spiritual gatherings significantly burdens Mr. Freed's exercise of religion. The prohibition is not neutral or generally applicable, nor is it narrowly

tailored to achieve the legitimate public health and safety interests of the government. Thus, the prohibition violates Mr. Freed's First Amendment right to the free exercise of religion.

The First Amendment protects the "free exercise" of religion, and fundamental to this protection is the right to gather for prayer and worship. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts ... [such as the] freedom of worship and assembly."). This protection was incorporated against the states in *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

Because of this fundamental protection, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993). The requirements to satisfy this scrutiny are so high that the government action will only survive this standard in rare cases and the government bears the burden of meeting this exceptionally demanding standard. *Id*. Defendant's prohibition on religious gatherings and the threatened penalties for holding such services clearly impose a substantial burden on Mr. Freed's religious exercise. This action would thus need to pass strict scrutiny unless it is both neutral and generally applicable. It is neither.

"[T]he minimum requirement of neutrality is that a law not discriminate on its face." *Id.* at 533. However, Defendant's restriction specifically and explicitly prohibits spiritual gatherings while allowing a number of businesses to remain in operation. There are numerous exceptions to GP 20-25 such as places like retail establishments that sell food, where far more people come into closer contact with less oversight. Indeed, shoppers may roam the aisles of grocery and

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF GRANTING
TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

11

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238

some retail establishments with no barriers between them so long as they maintain a distance of six feet from one another. Furthermore, the opening of construction work, provided protocols are satisfied, and the resuming of recreational boating, fishing, golfing, and other outdoor activities amplifies the apparent disparate treatment of religious exercise of which no loosening of restrictions has been spoken. Rather than applying the same restrictions applicable to other entities and activities, Defendant has specifically targeted spiritual gatherings. Even if members remain outdoors and are six feet away from one another wearing PPE, faith-based gatherings of any kind or size are prohibited. Because the prohibition discriminates on its face, it is not neutral.

Relatedly, government action is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect. *Id.* at 542-46. Defendant's prohibition of spiritual gatherings in the name of social distancing is not generally applicable. As illustrated, the number of exceptions indicate that a total ban on gatherings is not a generally applicable requirement.

Government actions that burden religious practice and are either not neutral or not generally applicable must satisfy a compelling governmental interest and be narrowly tailored to achieve that end. *Id.* at 546. Here, the government's prohibition cannot be "narrowly tailored" because the ban on spiritual gatherings is absolute. Less restrictive means of achieving the legitimate public safety interests are clearly possible. Social distancing and public health guidelines promulgated by the CDC and local officials are designed to limit the spread of COVID-19. In the outdoor meetings with Bible study members that Joshua Freed seeks to host, social distancing and hand sanitizing will be practiced, visitors will provide their own chairs, the meetings will include only one visitor at a time and one visit per day, with PPE worn. Despite the

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF GRANTING
TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

12

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238

ability and willingness of Plaintiff to take these precautions, Defendant's prohibition provides no margin for meeting to pray or worship consistent with health regulations.

By not allowing Plaintiff's outdoor meetings, even when careful to comply with and exceed the relevant public health guidelines, Defendant has not narrowly tailored their action to the compelling interest, and thus violate Plaintiff's constitutional right to free exercise of his religion.

>   2. *Mr. Freed is Likely to Succeed on the Merits of his Free Speech Claim under the U.S. Constitution.*

The government may not substantially burden citizens right to freedom of speech unless doing so is justified by a compelling government interest and done so by the least restrictive means. GP 20-25 violates the Free Speech clause by restricting religious speech and expression in a way that is not the least restrictive means. Further, government officials are given unfettered discretion in enforcement and penalty for enforcement, opening the potential for content- and viewpoint-based discrimination. Under the same analysis set forth above, GP 20-25 violates Joshua Freed's constitutional right to the freedom of speech. See *Cantwell* v. *Connecticut*, 310 U.S. 296 (1940); *Lovell* v. *Griffin*, 303 U.S. 444 (1938); *Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750 (1988) (discussing the danger of viewpoint discrimination occasioned by granting substantial discretion to officials in determining what speech is allowed).

>   3. *Mr. Freed is Likely to Succeed on the Merits of his Freedom of Assembly Claim under the U.S. Constitution.*

Defendant's blanket prohibition on all spiritual gatherings of more than one outside of a household also significantly burdens Plaintiff's freedom of assembly. The prohibition is not

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF GRANTING
TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

13

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238

narrowly tailored to achieve the legitimate public health and safety interests of the government. Thus, the prohibition violates Joshua Freed's First Amendment right to peaceably assemble.

The First Amendment of the U.S. Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937). "The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights." *Whitney v. California*, 274 U.S. 357, 373 (1927). When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

Here, as discussed above, the government's prohibition cannot satisfy strict scrutiny because less restrictive alternatives of achieving the legitimate public safety interests are clearly possible, as illustrated by the small gatherings Joshua Freed has proposed. Social distancing and public health guidelines promulgated by the CDC and state and local authorities are designed to limit the spread of COVID-19. By not allowing Plaintiff to have any meetings with Bible study members, even when modified to comply with the relevant public health guidelines, Defendant has not narrowly tailored their action to the compelling interest, and thus violate Plaintiff's constitutional right to peaceably assemble.

**B. Enforcement of the Order Will Inflict Irreparable Injury on Joshua Freed if the TRO is Not Issued.**

The Supreme Court held in *Elrod v. Burns* that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976). *See, e.g. O Centro Espirita Beneficiente Uniao do Vegetal v. Aschcroft*, 389 F.3d

973, 995 (10th Cir. 2004) (en banc) (per curiam) ("[The plaintiff] would certainly suffer an irreparable harm, assuming of course that it is likely to succeed on the merits of its…claim."), *sub nom. Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006).

Defendant's threatened actions will deny Joshua Freed and his Bible study members the right to practice their faith as they feel compelled to express it. More specifically, without a TRO, Mr. Freed and members of his Bible study will lose the opportunity to support one another in prayer together during this especially difficult and uncertain time. Defendant's actions thus prohibit Mr. Freed from practicing and expressing his faith in accordance with his sincerely held beliefs. This restriction on Mr. Freed's religious practices constitutes immediate and irreparable harm.

### C. The Balance of the Equities Tips in Mr. Freed's Favor.

"[T]he fact that a case raises serious First Amendment questions compels a finding that there exists the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in" favor of the party whose First Amendment rights are being violated. *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002) (internal quotation marks omitted). Further, a TRO would not cause substantial harm to others because Mr. Freed is committed to physically gathering in a manner consistent with guidelines issued by the CDC for community and faith-based organizations to ensure the safety and well-being of members and congregants. Mr. Freed has set forth the protocols he would advise visitors of prior to their coming. In this TRO he seeks to meet outdoors with only one other person. In order to ensure the physical safety of himself and his family, the visitors, and the community, Mr. Freed and the visitor would remain at least six feet apart, hand sanitize before and after meeting, and wear PPE.

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF GRANTING
TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

15

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238

The visitor would bring his or her own chair and remove it upon leaving, and meeting would last no more than one hour with only one meeting occurring each day. This will provide strong protection for the health of the participants and the community and err on the side of caution to prevent potential contact and ensure the transmission of illness is not facilitated by the service. These one-on-one meetings thus will not create substantial harm to anyone.

Here, Defendant's actions threaten to bar Joshua Freed from meeting in prayer one-on-one consistent with the practice of his faith. The balance of hardships thus tips sharply in favor of Mr. Freed.

### D. The Public Interest in Protecting the Constitutional Rights to Free Exercise of Religion, Assembly, and Speech Requires Entry of a TRO.

Finally, the public interest is well-served by a TRO that prevents Defendant from unlawfully burdening the exercise of religion, assembly, and speech. As the Ninth Circuit has observed, "'the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms.'" *Sammartano v. First Judicial Dist. Court*, 303 F.3d at 973 (quoting *Iowa Right to Life Comm'e, Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999)). Moreover, the Ninth Circuit has underscored that "'it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (quoting *G&V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)). The public interest weighs strongly in support of upholding Mr. Freed's right to have safe, outdoor meetings one-on-one with members of his Bible study.

### IV. Conclusion

For all the foregoing reasons, Plaintiff's motion for a temporary restraining order and/or preliminary injunction should be granted.

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF GRANTING
TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

16

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238

Respectfully submitted this 29th day of April, 2020,

**THE NORTH CREEK LAW FIRM**

By <u>//s// Mark C. Lamb</u>

Mark C. Lamb,   WSBA No. 30134
mark@northcreeklaw.com
12900 NE 180th Street, Suite  #235
Bothwell, Washington 98011

Attorney for Joshua Freed


Of Counsel

Hiram S. Sasser, III (*pro hac vice forthcoming*)
Michael Berry (*pro hac vice forthcoming*)
Justin Butterfield (*pro hac vice forthcoming*)
First Liberty Institute
2001 W Plano Pkwy
Plano, TX 75075
Tel: (972) 941-4444
Fax: (972) 941-4457
hsasser@firstliberty.org

Attorneys for Joshua Freed

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF GRANTING
TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

17

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238

**CERTIFICATE OF COUNSEL PURSUANT TO FED. R. CIV. P. 65(b)**

On Wednesday, April 22, at 4:13pm, I emailed the Complaint and exhibits to Kathryn Leathers, General Counsel for Governor Inslee. I asked her in the body of the email "if the Governor's proclamation 20-25…would prohibit a single member of Mr. Freed's Bible study from praying and reading the Bible with him in his yard, provided they stand six feet apart from each other and the person does not enter his home. On the same day, at 5:07 pm, Ms. Leathers responded that she is accepting service on behalf of the Governor and she further asked me to electronically serve the Attorney General and I did so at 5:22pm. In the same email I asked again about the individual meeting saying, "While I appreciate the second query may not lend itself to as immediate a response, this matter is highly time sensitive. I would respectfully request that you (or the Attorney General's office) provide guidance before noon on Friday April 24th, 2020."

No one from the Governor's office or the Attorney General's office has responded to my question as of the filing of this motion.

*/s/ J. Mark C. Lamb*
Mark C. Lamb

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF GRANTING
TEMPORARY RESTRAINING ORDER
CASE NO.: 2:20-cv-00599-TLF

18

The North Creek Law Firm
12900 NE 180th Street #235
Bothwell, Washington 98011
(425) 368-4238