1
2
3
4
5
6

The Honorable Benjamin H. Settle

7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9

JOSHUA FREED,

NO.  20-cv-00599-BHS

10

Plaintiff,

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER

11

v.

12

JAY INSLEE, Governor of Washington,
in his official capacity,

13

14

Defendant.

15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

  A.   COVID-19 and the Outbreak in Washington ......................................... 2

  B.   Washington State's Early Response to COVID-19 ................................ 4

  C.   The Governor's Stay Home – Stay Healthy Order ................................. 5

  D.   Guidance from the Governor's Office .................................................... 6

  E.   The Phased Plan to Ease Restrictions .................................................... 7

  F.   Freed's Lawsuit and TRO Motion ......................................................... 8

III.   ARGUMENT ................................................................................................... 9

  A.   Legal Standards ...................................................................................... 10

  B.   Freed Is Unlikely to Succeed on the Merits of His Claims ................... 10

    1.   Freed lacks Article III standing .................................................... 10

    2.   The Proclamation does not violate the Free Exercise Clause ........ 12

      a.   The Proclamation is neutral towards religion ..................... 13

      b.   The Proclamation is generally applicable ........................... 16

      c.   The Proclamation is rationally related to a legitimate state purpose ........ 17

      d.   Even if strict scrutiny applied, the Proclamation would meet it .............. 18

    3.   The Proclamation does not infringe Freed's freedom of speech .... 20

    4.   The Proclamation does not infringe Freed's freedom of assembly ................. 21

    5.   The Proclamation is Constitutional Under *Jacobson v. Massachusetts* .......... 22

  C.   Without a TRO, Freed Would Not Suffer Irreparable Harm .................. 23

  D.   The Balance of Equities and Public Interest Weigh Against a TRO ...... 24

IV.   CONCLUSION ................................................................................................. 24

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*B.C. v. Plumas Unified Sch. Dist.*,
  192 F.3d 1260 (9th Cir. 1999) ........................................................... 11

*Cassell v. Snyders*, --- F. Supp. 3d ----,
  No. 3:20-cv-50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020) ......................................... 10

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)........................................................... passim

*City of Renton v. Playtime Theatres, Inc.*,
  475 U.S. 41 (1986)........................................................... 20

*Cross Culture Christian Ctr. v. Newsom*,
  --- F. Supp. 3d ----, No. 2:20-cv-00832-JAM-CKD, 2020 WL 2121111 (E.D. Cal.
  May 5, 2020)........................................................... 9

*Emp't Div., Dep't of Human Res. v. Smith*,
  494 U.S. 872 (1990)........................................................... 2, 12, 24

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993)........................................................... 12

*First Baptist v. Kelly*,
  No. 20-1102-JWB, 2020 WL 1910021 (D. Kan. Apr. 18, 2020) ......................................... 20

*First Pentecostal Church of Holly Springs v. City of Holly Springs*,
  No. 3:20CV119 M-P, 2020 WL 1978381 (N.D. Miss. Apr. 24, 2020) ..................... 10, 15, 24

*Friends of DeVito v. Wolf*,
  --- A.3d ----, No. 68 MM 2020, 2020 WL 1847100 (Pa. Apr. 13, 2020) ........... 10, 19, 20, 21

*Garcia v. Duarte Reynosa*,
  No. C19-01928-RAJ, 2020 WL 363404 (W.D. Wash. Jan. 22, 2020) ................................ 10

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ........................................................... 10

*Gish v. Newsom*,
  No. EDCV-20-755 JGB (KKx), 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) ........... passim

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006)........................................................... 17

*Grace United Methodist Church v. City of Cheyenne*,
  451 F.3d 643 (10th Cir. 2006) ........................................................... 14

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Granny Goose Foods, Inc. v. Bhd. of Teamsters Local No. 70*,
    415 U.S. 423 (1974).................................................................................................. 10

*Hale v. Dep't of Energy*,
    806 F.2d 910 (9th Cir. 1986) .................................................................................. 24

*In re Abbott*,
    954 F.3d 772 (5th Cir. 2020) .................................................................................. 22

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905)................................................................................. 2, 18, 19, 22

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994).................................................................................................. 10

*Krishna Lunch of S. Cal. v. Gordon*,
    797 F. App'x 311 (9th Cir. 2020) (unpublished)...................................................... 12

*Legacy Church, Inc. v. Kunkel*,
    --- F. Supp. 3d ----, No. CIV 20-0327 JBSCY, 2020 WL 1905586 (D.N.M. Apr. 17,
    2020) ................................................................................................................ passim

*Lighthouse Fellowship Church v. Northam*,
    No. 2:20-cv-204, 2020 WL 2110416 (E.D. Va. May 1, 2020)........................... 10, 14, 16, 21

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).................................................................................................. 11

*Maryville Baptist Church v. Beshear*,
    --- F.3d ----, 2020 WL 2111316 (6th Cir. May 2, 2020) (per curiam) ........................... 10, 20

*Maryville Baptist Church v. Beshear*,
    No. 3:20-CV-278-DJH, 2020 WL 1909616 (W.D. Ky. Apr. 18, 2020)......................... 10, 19

*McCullen v. Coakley*,
    573 U.S. 464 (2014).................................................................................................. 21

*Miller v. Reed*,
    176 F.3d 1202 (9th Cir. 1999) ................................................................................ 12

*On Fire Christian Ctr., Inc. v. Fischer*,
    No. 3:20-CV-264-JRW, 2020 WL 1820249 (W.D. Ky. Apr. 11, 2020) ........................... 20

*Parents for Privacy v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) ........................................................................... 12, 16

*Prince v. Massachusetts*,
    321 U.S. 158 (1944).................................................................................................... 2

*Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys., Inc.*,
    180 F.3d 1072 (9th Cir. 1999) ................................................................................ 23

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Requa v. Kent Sch. Dist. No. 415,*
    492 F. Supp. 2d 1272 (W.D. Wash. 2007) .......................................................... 10

*Roberts v. Neace,*
    --- F. Supp. 3d ----, No. 2:20-cv-054 (WOB-CJS), 2020 WL 2115358 (E.D. Ky. 2020) ....... 9

*San Diego Cty. Gun Rights Comm. v. Reno,*
    98 F.3d 1121 (9th Cir. 1996) ..................................................................... 12

*Stoianoff v. Montana,*
    695 F.2d 1214 (9th Cir. 1983) .................................................................... 10

*Stormans, Inc. v. Wiesman,*
    794 F.3d 1064 (9th Cir. 2015) ............................................................... passim

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) .................................................................... 11

*United States v. Lee,*
    455 U.S. 252 (1982) ............................................................................... 12

*United States v. O'Brien,*
    391 U.S. 367 (1968) ............................................................................... 22

*Utah Gospel Mission v. Salt Lake City Corp.,*
    316 F. Supp. 2d 1201 (D. Utah 2004), *aff'd,* 425 F.3d 1249 (10th Cir. 2005) ..................... 24

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ............................................................................... 21

*Whitlow v. California,*
    203 F. Supp. 3d 1079 (S.D. Cal. 2016) ............................................................ 18

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................. 10, 23

### Statutes

RCW 38.52.050 ........................................................................................ 4

RCW 43.06.220 ....................................................................................... 1

### Other Authorities

Centers for Disease Control and Prevention (CDC), Coronavirus Disease 2019 (COVID-
    19), Cases in the U.S. (last updated May 4, 2020),
    https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html ...................... 1

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Christianson, Anna & Tiffany Littler,
*Gov. Kelly issues executive order to limit church gatherings, funerals*, KSNT, Apr. 7, 2020,
https://bit.ly/3bZV0F5 ........................................................................................................ 5

DOH, COVID-19 Data Dashboard,
https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/Da taDashboard ....................................................................................................................... 7

DOH, COVID-19 Data Dashboard, last updated May 2, 2020,
https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/Da taDashboard ....................................................................................................................... 3

Flores, Hilda,
*One-third of COVID-19 cases in Sac County tied to church gatherings, officials say*, KCRA (Apr. 1, 2020),
https://bit.ly/2XlCpPu ......................................................................................................... 5

Gandhi, Monica, *et al.*,
*Asymptomatic Transmission, the Achilles' Heel of Current Strategies to Control Covid-19*, N.E. J. of Med., Apr. 24, 2020,
https://www.nejm.org/doi/full/10.1056/NEJMe2009758 ...................................................... 3

*Implementation of Mitigation Strategies for Communities with Local COVID-19 Transmission*,
https://www.cdc.gov/coronavirus/2019-ncov/downloads/community-mitigation-strategy.pdf ........................................................................................................................ 23

Inst. for Health Metrics & Eval, *New IHME Forecast Projects Nearly 135,000 COVID-19 Deaths in US*, May 4, 2020,
http://www.healthdata.org/news-release/new-ihme-forecast-projects-nearly-135000-covid-19-deaths-us ............................................................................................................... 24

King Cty., Coronavirus Disease 2019 (COVID-19),
https://kingcounty.gov/depts/health/covid-19.aspx .............................................................. 23

Loosemore, Bailey & Mandy McLaren,
*Kentucky county 'hit really, really hard' by church revival that spread deadly COVID-19*, Louisville Courier J., Apr. 2, 2020,
https://bit.ly/2XkKCnd ........................................................................................................ 4

Otterman, Sharon & Sarah Maslin Nir,
*New Rochelle, Once a Coronavirus Hot Spot, May Now Offer Hope*, N.Y. Times, Mar. 27, 2020,
https://www.nytimes.com/2020/03/27/nyregion/new-rochelle-coronavirus.html ................... 4

Public Disclosure Comm'n, C1 Rep. for Joshua Freed (Aug. 8, 2019),
https://apollo.pdc.wa.gov/public/registrations/registration?registration_id=17235 ............... 8

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 20-cv-00599

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Read, Richard,
*A choir decided to go ahead with rehearsal. Now dozens of members have COVID-19 and two are dead*, L.A. Times, Mar. 29, 2020,
https://www.latimes.com/world-nation/story/2020-03-29/coronavirus-choir-outbreak.......... 4

Shin, Youjin, et al.,
*How a South Korean church helped fuel the spread of the coronavirus*, *Wash. Post*, Mar. 25, 2020,
https://www.washingtonpost.com/graphics/2020/world/coronavirus-south-korea-church/ ................................................................................................................... 5

Wash. Dep't of Health, 2019 Novel Coronavirus Outlook (COVID-19), (last updated May 3, 2020),
https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard ........................................................................................................ 1

Wash. Gov. Jay Inslee, *Inslee announces easing of outdoor restrictions*, Apr. 27, 2020,
https://www.governor.wa.gov/news-media/inslee-announces-easing-outdoor-restrictions........................................................................................................... 16

Wash. Gov. Jay Inslee, Proclamations,
https://www.governor.wa.gov/office-governor/official-actions/proclamations ..................... 6

Wash. State COVID-19 Risk Assessment Dashboard,
https://coronavirus.wa.gov/what-you-need-know/covid-19-risk-assessment-dashboard........ 7

World Health Organization, Coronavirus disease 2019 (COVID-19) Situation Report – 100, May 5, 2020,
https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200505covid-19-sitrep-106.pdf?sfvrsn=47090f63_2 ............................................. 1

## **Rules**

Fed R. Civ. P. 65(b)(1) ............................................................................................ 10

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

# I.    INTRODUCTION

Since China first reported a mysterious pneumonia outbreak in late December 2019, coronavirus disease 2019 (COVID-19) has swept the globe. The virus—SARS-CoV-2—has infected 3.5 million people and caused 240,000 deaths worldwide.[1] More than 1.1 million cases and 67,000 deaths have struck the United States.[2] In Washington State, the virus's original U.S. epicenter, more than 15,000 people have contracted COVID-19 and at least 841 have died.[3]

To slow the spread of COVID-19, Defendant Governor Jay Inslee exercised his emergency powers under RCW 43.06.220 to issue a proclamation ordering "[a]ll people in Washington State" to "immediately cease leaving their home," except for essential activities such as grocery shopping or medical appointments. The Governor's "Stay Home – Stay Healthy" order was one of many such state executive actions—variously termed "shelter-in-place," "stay-at-home," or other similar titles—each of which employs the single public health tool available in the absence of a vaccine, cure, or widespread testing to mitigate the transmission of a highly contagious virus. The results thus far have been largely positive epidemiologically, with increasing evidence that Washington and other states have begun to lower transmission and death rates, "flattening" the epidemiological curve.

Economically, socially, and otherwise, however, the emergency measures have brought unprecedented pain and hardship, restricting the rights and freedoms all citizens normally enjoy. In this time of global crisis and shared sacrifice, people all around this state are confined to their homes—unable to visit with friends and family outside their household, to see a ballgame or a play, to attend school, or, in many cases, even to go to work and earn a living. During this surreal time, Washingtonians are also unable to gather outside their homes for in-person worship.

---

[1] World Health Organization, Coronavirus disease 2019 (COVID-19) Situation Report – 100, May 5, 2020, https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200505covid-19-sitrep-106.pdf?sfvrsn=47090f63_2.

[2] Centers for Disease Control and Prevention (CDC), Coronavirus Disease 2019 (COVID-19), Cases in the U.S. (last updated May 4, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[3] Wash. Dep't of Health, 2019 Novel Coronavirus Outlook (COVID-19), (last updated May 3, 2020), https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Coinciding with Easter, Passover, and Ramadan, the COVID-19 state of emergency has forced congregants of all religions to find new—and perhaps less fulfilling—ways to practice their faith.

That the Governor's stay-home order burdens the unrestrained exercise of religion cannot be denied. But the notion that it violates the constitution cannot be squared with more than 100 years of jurisprudence. During the smallpox outbreak early in the last century, the Supreme Court held that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905). Writing for the Court decades later, Justice Scalia explained: "We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 878–79 (1990). Nor should this Court, least of all during a pandemic.

Plaintiff Joshua Freed seeks a special dispensation from Washington's stay-home order to conduct Bible study meetings in his backyard. The First Amendment does not compel such a religious exemption from a neutral, generally applicable law, which would not only endanger Freed's guests, family, and all those they encounter but "in effect . . . permit every citizen to become a law unto himself." *Id.* at 879 (quotation marks and citation omitted). Religious worship is a fundamental human right—one never more cherished than in times of peril and uncertainty. But that right "does not include liberty to expose the community . . . to communicable disease or . . . to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944). Freed's Motion for a Temporary Restraining Order (TRO) should be denied.

## II.     FACTUAL BACKGROUND

### A.     COVID-19 and the Outbreak in Washington

The SARS-CoV-2 virus, which causes COVID-19, is a coronavirus not previously identified in humans. Declaration of Dr. Kathy Lofy (Lofy Decl.) ¶ 6. It is highly contagious and potentially fatal. *Id.* ¶¶ 6–7. Seniors and persons with underlying medical conditions are most vulnerable to serious complications and death. *Id.* ¶ 7. COVID-19 spreads primarily through

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

close person-to-person contact via respiratory droplets produced when an infected person coughs, sneezes, or talks. *Id.* ¶ 6. There is a lag of at least several days between the time a person contracts the virus and the onset of symptoms.[4] In many cases, persons infected with COVID-19 never experience symptoms. Lofy Decl. ¶ 6. Because asymptomatic carriers may spread the virus, an infected person may spread COVID-19 without any indication he or she is a carrier. *Id.*

On January 21, 2020, the Washington State Department of Health (DOH) announced a case of COVID-19 in Snohomish County—believed then to be the first such case in the United States. Lofy Decl. ¶ 4. In late January, the World Health Organization and the U.S. Department of Health and Human Services each declared the outbreak a "public health emergency." *Id.* ¶ 5. Additional COVID-19 cases in Washington emerged the next month—including a cluster at a Kirkland nursing home. Lofy Decl. ¶ 4. On February 29, Washington health officials announced what was then considered the country's first COVID-19 death. *Id.* In late February and into March, the number of new COVID-19 cases confirmed each day (or "epidemiological curve") increased dramatically in Washington, as Figure 1 illustrates.

**Figure 1: Washington State COVID-19 Epidemiological Curve, May 3, 2020[5]**



---

[4] *See, e.g.*, Monica Gandhi, *et al.*, *Asymptomatic Transmission, the Achilles' Heel of Current Strategies to Control Covid-19*, N.E. J. of Med., Apr. 24, 2020, https://www.nejm.org/doi/full/10.1056/NEJMe2009758.

[5] DOH, COVID-19 Data Dashboard (last updated May 3, 2020), https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard. DOH notes that "[i]llnesses that began in the last 4 to 7 days may not yet be reported." *Id.*

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

## B.    Washington State's Early Response to COVID-19

On February 29, the Governor issued Proclamation 20-05, declaring a State of Emergency in Washington due to COVID-19, directing implementation of the state's emergency plans, and ordering the National Guard and the State Guard into active state service. Declaration of David Postman (Postman Decl.) ¶ 4, Ex. 1 at 11; *see generally* RCW 38.52.050 (governor's emergency powers). The Governor has issued over 70 proclamations amending Proclamation 20-05, directing the State's emergency mitigation measures and other responses to COVID-19. Adopted to meet rapidly "evolving circumstances in light of new data and scientific analysis," and in consultation with the DOH and other public health experts, the State's mitigation measures grew stricter as COVID-19 cases and deaths accelerated and projections became more dire. Postman Decl. ¶¶ 5, 18. They included: prohibiting gatherings of 250 people or more—and, later, 50 or more; permitting smaller gatherings only if individuals complied with CDC and DOH social distancing and sanitation guidelines; closing schools, colleges, and universities; prohibiting gatherings of any size in "public venues," including restaurants, gyms, private clubs, faith-based organizations, and any "other similar venues." *Id*. ¶¶ 7–12; Lofy Decl. ¶ 10.

Despite Washington's early and aggressive mitigation strategies, in mid-March the state had the nation's highest absolute number of COVID-19 cases (and the highest or among the highest per capita). Lofy Decl. ¶ 13. One of the state's worst outbreaks came at a Mount Vernon church, when a March 10 choir practice tragically resulted in 45 infections, 3 hospitalizations, and 2 deaths in a relatively rural community—despite social distancing precautions. *See* Richard Read, *A choir decided to go ahead with rehearsal. Now dozens of members have COVID-19 and two are dead*, L.A. Times, Mar. 29, 2020, https://www.latimes.com/world-nation/story/2020-03-29/coronavirus-choir-outbreak. This was but one of many examples around the country of major COVID-19 outbreaks at religious gatherings.[6]

---

[6] *See, e.g.*, Sharon Otterman & Sarah Maslin Nir, *New Rochelle, Once a Coronavirus Hot Spot, May Now Offer Hope*, N.Y. Times, Mar. 27, 2020, https://www.nytimes.com/2020/03/27/nyregion/new-rochelle-coronavirus.html; Bailey Loosemore & Mandy McLaren, *Kentucky county 'hit really, really hard' by church revival*

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

C.      **The Governor's Stay Home – Stay Healthy Order**

On March 23, the Governor issued Proclamation 20-25, the "Stay Home – Stay Healthy" Order (the Proclamation). "[T]he worldwide COVID-19 pandemic," the Proclamation declares, "continues to threaten the life and health of our people . . . and remains a public disaster affecting life, health, property or the public peace." Postman Decl., Ex. 9 at 41. It noted that, with 2,221 COVID-19 cases then in the state, "models predict that many hospitals in Washington State will reach capacity or become overwhelmed with COVID-19 patients within the next several weeks unless we substantially slow down the spread of COVID-19." *Id.*

The Proclamation requires everyone in the state to "immediately cease leaving their home . . . except: (1) to conduct or participate in essential activities," or "(2) for employment in essential business services." *Id.* at 43 (emphasis omitted). "Essential activities" are strictly limited to (1) "[o]btaining necessary supplies and services for family or household members," (2) "activities essential for . . . health and safety," such as "seeking . . . health" services or supplies; (3) "[c]aring for [someone] . . . in another household or residence" or "transport[ing]" him or her "for essential health and safety activities"; and (4) "outdoor exercise activities," provided that "appropriate social distancing practices are used." *Id.* (emphasis omitted).

The Proclamation defines "essential business services" as work either for a business identified in the State's Essential Critical Infrastructure Workers list (Essential Workers list) or "carrying out minimum basic operations . . . for a non-essential business." *Id.* The Essential Workers list sets forth essential workers in 13 business sectors "needed to maintain continuity of operations . . . critical to public health and safety, as well as economic and national security." *Id.* at 46. The essential workforce includes: health care providers, *id.* at 46; law enforcement, *id.*

---

*that spread deadly COVID-19*, Louisville Courier J., Apr. 2, 2020, https://bit.ly/2XkKCnd; Hilda Flores, *One-third of COVID-19 cases in Sac County tied to church gatherings, officials say*, KCRA (Apr. 1, 2020), https://bit.ly/2XlCpPu; Anna Christianson & Tiffany Littler, *Gov. Kelly issues executive order to limit church gatherings, funerals*, KSNT, Apr. 7, 2020, https://bit.ly/3bZV0F5; *see also* Lofy Decl. ¶ 6; Youjin Shin, et al., *How a South Korean church helped fuel the spread of the coronavirus*, Wash. Post, Mar. 25, 2020, https://www.washingtonpost.com/graphics/2020/world/coronavirus-south-korea-church/.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

at 48; and grocery store and certain restaurant workers, *id.* at 49. Essential businesses may continue operations only if they follow "social distancing and sanitation measures established by the [U.S.] Department of Labor[]" and DOH for COVID-19. *Id.* at 44.

The Proclamation ordered "[a]ll people in Washington" to "immediately cease participating in all public and private gatherings and multi-person activities for social, spiritual and recreational purposes, regardless of the number of people involved." *Id.* (emphasis omitted). Such activity "includes, but is not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities," as well as "wedding and funeral events." *Id.* The prohibition does "not apply to activities . . . solely including those people who are part of a single household." *Id.* (emphasis omitted). The original Proclamation was to remain in effect until April 6. *Id.* at 46. The Governor later extended the Proclamation to expire on May 4, and then on May 31. *Id.*, Exs. 10 at 62, 14 at 85.

## D.      Guidance from the Governor's Office

The Governor and his office have provided guidance and directives to facilitate compliance with—and alleviate the burdens attendant in—the Proclamation. The Governor has issued amendatory proclamations to, for example, suspend driver license expiration dates, Gov. Procl. 20-41, and prohibit certain wage garnishments, Gov. Procl. 20-49.[7] The Governor's office has received—and responded to—hundreds of thousands of inquiries regarding COVID-19 or the Proclamation. *Id.* ¶ 18. And the Governor has held regular televised briefings to update the public on the state of emergency. Postman Decl. ¶ 3. In one briefing, the Governor noted that "religious institutions can have . . . a certain number of people present at . . . places of worship to ensure that online remote services can be afforded to their flocks." *Id.* ¶ 19.a.

The Essential Workers list includes "[b]ehavioral health workers (including mental [health] . . .) responsible for coordination, outreach, engagement, and treatment to individuals in

---

[7] For a complete repository of the Governor's proclamations, see Wash. Gov. Jay Inslee, Proclamations, https://www.governor.wa.gov/office-governor/official-actions/proclamations.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

need of mental health . . . services." *Id.*, Ex. 9 at 49. This job classification prompted inquiries, including from media and a state legislator, as to whether essential mental health services include "religious counseling." The Governor's Office responded affirmatively: "Religious counseling is deemed essential. To the greatest extent possible, religious counseling, like all counseling, should be conducted remotely," but if not possible, "in-person counseling may be conducted while following social distancing and sanitization practices." Declaration of Kathryn Leathers (Leathers Decl.), Ex. 1, 2, 3. In a later proclamation, the Governor confirmed that he "continue[s] to classify religious counseling as an essential activity." Postman Decl., Ex. 14 at 86.

**E.    The Phased Plan to Ease Restrictions**

After a month, the Proclamation's unprecedented mitigation measures had begun to yield positive results. Statewide, the daily new COVID-19 case count had fallen by more than half from 435 on March 23 to 201 on April 23.[8] By April 29, state health officials had observed a "falling disease burden" in the state as measured by the lower rates of COVID-19 cases, hospitalizations, and deaths, improved public health modeling projections, and adherence to physical distancing requirements. At the same time, the situation remains precarious due to limited "testing capacity and availability," a continuing "risk to vulnerable populations," and limited isolation and quarantine ability.[9] In addition, for every confirmed COVID-19 case there are as many as 19 undetected cases. Lofy Decl. ¶ 17.

However, favorable trends and widespread compliance with social distancing directives led the Governor on April 29 to amend the Proclamation to relax some of the restrictions on outdoor recreational activities, including hunting, fishing, boating, golfing, and day-use activities at public parks and public lands. Postman Decl., Ex. 12 at 72. Participants must "fully comply with . . . social distancing and coronavirus related hygiene requirements," *id.*, which

---

[8] DOH, COVID-19 Data Dashboard, https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard.

[9] Wash. State COVID-19 Risk Assessment Dashboard, https://coronavirus.wa.gov/what-you-need-know/covid-19-risk-assessment-dashboard.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

prohibit "[g]atherings" and provide that "[o]nly members of the same household may travel and recreate together," *id.*, Ex. 13 at 75. Recreants must "[k]eep six feet between individuals outside [their] immediate household" during outdoor activities. *Id.* The Governor has also reopened certain low-risk construction activity, subject to rigorous public health precautions. *Id.* ¶ 15, Ex. 11. On May 4, the Governor formally set forth his phased reopening plan, relaxing certain of the Proclamation's restrictions in the current Phase I. *Id.*, Ex. 14.[10] Further amendments to the stay-home order are anticipated as the facts develop, consistent with data and science. *Id.* ¶ 18.

## F.   Freed's Lawsuit and TRO Motion

In this lawsuit, Freed alleges violations of his First Amendment rights. Dkt. 1. Describing himself as "a practicing Christian," the "Founder of Globe Leadership," and a "former licensed marriage and family counselor," *id.* ¶¶ 16, 17, 6, Freed is also a current candidate for governor.[11]

Freed states that for several years he has "prayed with and supported dozens of young people who have sought emotional, mental and spiritual support." Dkt. 1 ¶ 6. He and his wife "have hosted a Bible study at their home every Wednesday evening" with up to "50 participants." *Id.* ¶ 18. Since the Proclamation, Freed has endeavored to conduct Bible study services online, but has found it "challenging." *Id.* Freed alleges that the Proclamation violates his free exercise rights "by prohibiting him from holding in-person bible study services regardless of the number of participants." *Id.* ¶ 23. He also alleges that the Proclamation violates his rights to free speech and to peaceably assemble. *Id.* ¶¶ 31, 49. Freed's Complaint seeks a TRO, preliminary injunction, and permanent injunction enjoining "the State of Washington from enforcing" the Proclamation so as to "allow[] Plaintiff and the members of his Bible study to continue to meet in-person (as a group or individually) for prayer and worship." *Id.* at 10, ¶ a.

---

[10] Proclamation 20-25.3 allows (i) counties with populations of 75,000 people or fewer and without COVID-19 cases in the past three weeks to request exemptions; (ii) "drive-in" religious services with "one household per vehicle"; and (iii) "additional low-risk activities" subject to "industry specific requirements" as well as DOH "social distancing and hygiene requirements," including: landscaping and lawn care, vehicle and vessel sales; pet walking; retail (curb-side pick-up only); and car washes. Postman Decl., Ex. 14 at 85, 86.

[11] Public Disclosure Comm'n, C1 Rep. for Joshua Freed (Aug. 8, 2019), https://apollo.pdc.wa.gov/public/registrations/registration?registration_id=17235.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    In his motion for a TRO, Freed appears to seek different relief. On the one hand, Freed

2    "asks the Court to block the Defendant's official capacity enforcement of his explicit

3    prohibitions on spiritual gatherings of any size, regardless of precautions." Dkt. 9 at 1. On the

4    other hand, Freed seeks a narrower "temporary restraining order to prevent Defendant . . . from

5    prohibiting Plaintiff from having one-on-one outdoor, spiritual gatherings with members of his

6    Bible study, during which all applicable health guidelines are followed." *Id.*

7                              **III.    ARGUMENT**

8    For four reasons, the Court should deny Freed's TRO motion. First, Freed lacks Article

9    III standing to assert this pre-enforcement challenge to the Proclamation because he has failed

10   to establish a genuine threat of imminent prosecution. Second, Freed is unlikely to prevail on the

11   merits of any of his First Amendment claims: His free exercise claim lacks merit because the

12   Proclamation is a neutral and generally applicable law that, under the Supreme Court's

13   governing standards, need only meet rational basis review—a test this temporary emergency

14   measure easily passes. His speech and assembly claims fail for multiple reasons, including

15   because the Proclamation (i) does not regulate speech at all; (ii) even if it did, is content- and

16   viewpoint-neutral; (iii) narrowly tailored to serve substantial government interests, and (iv)

17   leaves ample alternative channels for Freed's expression or assembly. Third, Freed is not

18   irreparably harmed by the Proclamation, which permits the very one-on-one religious counseling

19   he apparently seeks to conduct. Fourth, the balance of equities and public interest favor the

20   Governor because (i) again, Freed may already conduct religious counseling; and (ii) to the

21   extent Freed seeks a broader religious exemption, it would undermine the efficacy of this critical

22   temporary mitigation tool taken to slow the spread of COVID-19. This Court should deny

23   Freed's TRO motion and join the growing consensus of courts rejecting free exercise-, speech-,

24   or assembly-based challenges to state and local stay-home orders during this pandemic.[12]

25   ───────────────────

26   [12] *See, e.g.*, *Cross Culture Christian Ctr. v. Newsom*, --- F. Supp. 3d ----, No. 2:20-cv-00832-JAM-CKD, 2020 WL 2121111 (E.D. Cal. May 5, 2020) (free exercise); *Roberts v. Neace*, --- F. Supp. 3d ----, No. 2:20-cv-054 (WOB-CJS), 2020 WL 2115358 (E.D. Ky. 2020) (same); *Cassell v. Snyders*, --- F. Supp. 3d ----, No. 3:20-cv-

DEFENDANT'S RESPONSE TO                      9                ATTORNEY GENERAL OF WASHINGTON
MOTION FOR TEMPORARY                                              Complex Litigation Division
RESTRAINING ORDER                                                800 5th Avenue, Suite 2000
NO.  20-cv-00599                                                  Seattle, WA 98104-3188
                                                                 (206) 474-7744

## A.      Legal Standards

A TRO is "an extraordinary remedy which is granted only sparingly." *Requa v. Kent Sch. Dist. No. 415*, 492 F. Supp. 2d 1272, 1283 (W.D. Wash. 2007). Its purpose is to "preserv[e] the status quo and prevent[] irreparable harm." *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local No. 70*, 415 U.S. 423, 439 (1974). The same standard applicable to preliminary injunctions governs TROs. *Garcia v. Duarte Reynosa*, No. C19-01928-RAJ, 2020 WL 363404, at *1 (W.D. Wash. Jan. 22, 2020). Under that standard, Freed must make a "clear showing" that (1) he is likely to succeed on the merits; (2) in the absence of a TRO, he would likely suffer irreparable harm; (3) the balance of equities tips in his favor; and (4) a TRO is in the public interest. Fed R. Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## B.      Freed Is Unlikely to Succeed on the Merits of His Claims

The first *Winter* factor—likelihood of success on the merits—is "the most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Freed has not satisfied his heavy burden, for it is unlikely that he would succeed on any of his claims.

### 1.      Freed lacks Article III standing

A person wishing to challenge a law before it is enforced "must demonstrate a genuine threat that the allegedly unconstitutional law is about to be enforced against him." *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983).[13] The mere existence of a law, which may or may not ever be applied to a plaintiff, is not enough to create a case or controversy. *Id.*

---

50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020) (same); *Lighthouse Fellowship Church v. Northam*, No. 2:20-cv-204, 2020 WL 2110416 (E.D. Va. May 1, 2020) (free exercise, speech, and assembly); *Gish v. Newsom*, No. EDCV-20-755 JGB (KKx), 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) (same); *Maryville Baptist Church v. Beshear*, No. 3:20-CV-278-DJH, 2020 WL 1909616 (W.D. Ky. Apr. 18, 2020), *injunction pending appeal granted in part by* --- F.3d ----, 2020 WL 2111316 (6th Cir. May 2, 2020) (per curiam); *Legacy Church, Inc. v. Kunkel*, --- F. Supp. 3d ----, No. CIV 20-0327 JB\SCY, 2020 WL 1905586 (D.N.M. Apr. 17, 2020) (free exercise and assembly); *Friends of DeVito v. Wolf*, --- A.3d ----, No. 68 MM 2020, 2020 WL 1847100 (Pa. Apr. 13, 2020) (speech and assembly); *see also First Pentecostal Church of Holly Springs v. City of Holly Springs*, No. 3:20CV119 M-P, 2020 WL 1978381, at *4 (N.D. Miss. Apr. 24, 2020) (declining to grant TRO motion raising free exercise, speech, and assembly claims; though city agreed to allow drive-in church services, "this court is considerably less sympathetic to claims . . . to hold indoor church services").

[13] The burden of establishing standing rests with the party seeking to invoke this Court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Freed must show he has "suffered an injury in fact"

---

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 20-cv-00599

10

The Governor proclaimed a public health emergency with the expectation that all Washingtonians will comply to protect the health of us all. Nonetheless, "federal courts are required sua sponte to examine jurisdictional issues such as standing." *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). The importance of steps to combat COVID-19 accordingly do not excuse Freed from demonstrating that he faces an imminent risk of prosecution for violating the emergency proclamations. He has not done so.

The test in this circuit for standing in pre-enforcement challenges is clear: To avoid resolving hypothetical disputes, a plaintiff must show "a genuine threat of imminent prosecution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). Three factors require consideration: "[1] whether the plaintiff[] [has] articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged [law]." *Id.* No single factor is dispositive, and all should be considered. *See, e.g., id.* at 1139–41. Freed satisfies none.

First, he does not allege that he has a "concrete plan" to violate the Proclamation. He alleges merely that he desires to engage in conduct that he thinks might violate the Proclamation. He accordingly fails to even allege the first *Thomas* factor. Moreover, the relief he seeks by way of a TRO appears limited to "having one-on-one outdoor, spiritual gatherings with members of his Bible study, during which all applicable health guidelines are followed." Dkt. 9 at 1. But the Proclamation does not preclude in-person counseling sessions that cannot be performed remotely, and the Governor "trusts the individuals involved to determine what constitutes religious or spiritual counseling." Postman Decl. ¶ 19.b; *see also* Letters Decl., Exs. 1–3. Second, Freed does not allege that any authority has specifically threatened to commence proceedings against him, precluding him from satisfying the second factor. *Thomas*, 220 F.3d at 1139; *see*

that is both "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   *also San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) ("Here,

2   plaintiffs do not identify even a general threat made against them."). Third, Freed has not

3   identified an enforcement measure against anyone for religious gatherings. Freed lacks standing

4   and thus cannot prevail on any claim.

### 2.   The Proclamation does not violate the Free Exercise Clause

6   Freed primarily argues that the Proclamation violates the Free Exercise Clause, U.S.

7   Const. amend. I, because it precludes him from hosting "in-person bible study services" of up to

8   50 guests in his home. Dkt. 1 ¶¶ 18, 23. His claim overlooks a core principle of the Free Exercise

9   Clause: it "does not relieve an individual of the obligation to comply with a 'valid and neutral

10  law of general applicability on the ground that the law proscribes (or prescribes) conduct that his

11  religion prescribes (or proscribes).'" *Smith*, 494 U.S. at 879 (quoting *United States v. Lee*, 455

12  U.S. 252, 263 n.3 (1982) (Stevens, J., concurring in judgment)). Under the Supreme Court's

13  governing standard, "a law that is neutral and of general applicability need not be justified by a

14  compelling governmental interest even if the law has the incidental effect of burdening a

15  particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*

16  (*Lukumi*), 508 U.S. 520, 531 (1993). Rather, if "a law is neutral and applies generally, [courts]

17  uphold it if it is rationally related to a legitimate state purpose." *Krishna Lunch of S. Cal. v.*

18  *Gordon*, 797 F. App'x 311, 314, 375 (9th Cir. 2020) (unpublished) (citing *Miller v. Reed*, 176

19  F.3d 1202, 1207 (9th Cir. 1999)). The party challenging the law under the Free Exercise Clause

20  "has the burden to negate 'every conceivable basis which might support' the policy." *Id.* (quoting

21  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

22  The tests for "[n]eutrality and general applicability are interrelated." *Lukumi*, 508 U.S. at

23  531. To assess neutrality and general applicability, courts evaluate "both the text of the

24  challenged law as well as the effect . . . in its real operation." *Parents for Privacy v. Barr*, 949

25  F.3d 1210, 1234 (9th Cir. 2020) (quotation marks and citation omitted). Both tests "focus on

26  whether a law specifically targets or singles out religion." *Id.* at 1234–35. Here, the Proclamation

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

passes both tests because it is a temporary, broad-based public health measure that does not target religious conduct or belief and applies to religious and secular gatherings alike. As a neutral and generally applicable law, the Proclamation is not just "rationally related" to public health, it is a critical tool to preventing the spread of a deadly and highly contagious virus. Lofy Decl. ¶ 18. It is perfectly consistent with the Free Exercise Clause.

### a.    The Proclamation is neutral towards religion

A law is "not neutral" if its "object . . . is to infringe upon or restrict practices because of their religious motivation." *Lukumi*, 508 U.S. at 533. The law must be "facially" neutral, for the "minimum requirement of neutrality is that a law not discriminate on its face." *Id.* And it must be neutral in "real operation," *id.* at 535. A law is operationally non-neutral if "[t]he record . . . compels the conclusion that suppression of [religion] . . . was the object." *Id*. at 534.

The Proclamation is facially neutral because it "make[s] no reference to any religious practice, conduct, belief, or motivation." *Stormans, Inc. v. Wiesman* (*Stormans II*), 794 F.3d 1064, 1076 (9th Cir. 2015). The Proclamation's operative language provides: "All people in Washington shall immediately cease leaving their home or place of residence except: (1) to conduct or participate in essential activities, and/or (2) for employment in essential business services." Postman Decl., Ex. 9 at 43. This blanket stay-home order applies to "all public and private gatherings," whether for religious or secular purposes. *Id.* at 4. And while the Proclamation references "spiritual . . . gatherings" and "faith-based . . . events," it does so by way of example and as part of a non-exhaustive list that includes numerous secular gatherings, including "community, civic, public, leisure . . . or sporting events; parades; concerts; festivals; conventions; fundraisers," as well as a catch-all of "similar activities." *Id.* at 4. Thus, Freed's contention that the Proclamation "discriminates on its face" is impossible to square with the text. *See, e.g.*, *Gish*, 2020 WL 1979970, at *6 ("While they do list faith-based gatherings as a type of in-person gathering that is prohibited, faith-based gatherings are referenced as an example—they are not the target of the Orders. Facial neutrality does not require freedom from any mention of

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

religion, instead 'the minimum requirement of neutrality is that a law not *discriminate* on its face.'") (citation omitted) (quoting *Lukumi*, 508 U.S. at 533); *accord Lighthouse Fellowship Church*, 2020 WL 2110416, at *5. Because the Proclamation "appl[ies] to both religious and secular gatherings," it "do[es] not discriminate, and [is] therefore facially neutral." *Id.*

The Proclamation is also neutral in operation. To mitigate the spread of COVID-19, the Proclamation prohibits both religious and secular gatherings and does not "substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect." *Stormans II*, 794 F.3d at 1079. Freed presents no evidence to support his bald allegation that the Governor "has specifically targeted spiritual gatherings." Dkt. 9-1 at 12. As an in-circuit district court explained in denying a similar TRO motion, "The majority of the prohibited conduct is secular: schools are closed, restaurants are shuttered, concerts and sporting events are canceled; citizens cannot visit public recreation spaces or gather with friends who live outside of their household; non-essential workers fortunate enough to still have jobs must work from home." *Gish*, 2020 WL 1979970 at *6. The same is true of the Proclamation. Far from a "restriction[] against religion in disguise," the Proclamation is temporary, all-encompassing public health measure in which "both secular and religious conduct are prohibited equally." *Id.*; *see also Stormans II*, 794 F.3d at 1077 ("the rules prescribe and proscribe the same conduct for all, regardless of motivation").

That the Proclamation exempts certain "essential activities" does not render the Proclamation non-neutral. A law may be non-neutral where it is "underinclusive to a substantial extent with respect to . . . the [state] interests." *Lukumi*, 508 U.S. at 547. But that does not mean that any "secular exemption automatically creates a claim" under the Free Exercise Clause. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 651 (10th Cir. 2006). "[A]ll laws are selective to some extent." *Lukumi*, 508 U.S. at 542. They are impermissibly underinclusive only where they prohibit religious conduct but not "substantial, comparable secular conduct." *Stormans II*, 794 F.3d at 1079; *see also Gish*, 2020 WL 1979970, at *6

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    ("constitutional analysis only requires that the Court compare the prohibited religious conduct

2    with analogous secular conduct"). While the Proclamation deems food services to be essential,

3    such activities are "not analogous" to an "in-person religious gathering," for multiple reasons.

4    *Gish*, 2020 WL 1979970 at *6. First, religious gatherings generally involve more person-to-

5    person contact than grocery shopping or food take-out, "where people enter a building quickly,

6    do not engage directly with others except" (perhaps) "at points of sale, and leave once the task

7    is complete." *Id.*[14] Instead, a religious gathering is "more analogous to attending school," "a

8    concert," a book club, or other "activities where people sit together in an enclosed space to share

9    a communal experience." *Id.* All those activities are prohibited under the Proclamation.

10    Second, even if grocery shopping and restaurant take-out were comparable to in-person

11    religious gatherings in terms of transmission risk, such risks are necessary for people to

12    survive.[15] Grocery stores and restaurants are "essential services" because "without access to . . .

13    food . . . , more citizens would become ill or die." *Gish*, 2020 WL 1979970, at *6. Permitting

14    this common-sense exemption does not make the Proclamation non-neutral.

15    Nor is the analysis altered by the relaxation of restrictions on certain outdoor recreation

16    activities and construction work. Dkt. 9-1 at 12. None of these secular activities is remotely

17    analogous to the "communal prayer, worship and fellowship" Freed seeks to conduct. Dkt. 1,

18    ¶ 17. Moreover, such phased-in measures reflect the temporary and evolving nature of the state's

19

20    [14] *See also* Lofy Decl. ¶ 16 ("face-to-face interactions—those most likely to result in transmission—with workers at a grocery store or pharmacy are generally much shorter in duration than face-to-face interactions during

21    social, spiritual or recreational events"); *First Pentecostal*, 2020 WL 1978381, at *2 ("[T]he Church insists that its members practice 'social distancing' during indoor church services, but this strikes this court as being a rather

22    hollow guarantee, given the inherent difficulties involved in policing meetings behind closed doors and the inherent medical uncertainties with regard to what a safe Covid-19 distance actually is in the context of individuals who may

23    be sitting together in the same room for an hour or more. Obviously, grocery store shoppers generally do not subject themselves to a comparable degree of exposure . . . .").

24    [15] Moreover, the Proclamation mitigates those risks by requiring essential businesses, including food service establishments, to "establish and implement social distancing and sanitation measures." Postman Decl., Ex.

25    9 at 44. Such requirements belie Freed's assertion that the Proclamation "directly targets religious gatherings." Dkt. 9-1 at 10. *See, e.g.*, *Legacy Church*, 2020 WL 1905586, at *34 ("Although public health risks may arise in allowing

26    say, Wal-Mart, to continue its operations, [the order] does not leave such business untouched" but rather "directs [them] to reduce occupancy, enforce social distancing, and reduce staffing.").

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

reopening plan, with further changes anticipated. Postman Decl. ¶ 18.a. They also include several important restrictions, including "limit[ing] . . . recreation partners to only those who live within [a] household unit." Freed's requested exemption for in-person religious gatherings is not so limited. And, as the Governor noted, the easing of outdoor recreation activities may be "scale[d] . . . back" if officials observe that such restrictions are not followed.[16] Again, such monitoring would be impossible in the context of private religious gatherings. As for the resumption of "low risk construction work," not only must all construction projects enforce social distancing, sanitation, and personal protective equipment (PPE) guidelines, but are subject to a comprehensive, 30-point set of rules to protect workers.  Postman Decl. ¶ 15, Ex. 11. In this way, too, the Proclamation "strike[s] a balance between saving lives and avoiding societal collapse." *Lighthouse Fellowship Church*, 2020 WL 2110416, at *8. Because the Proclamation does not permit "substantial" secular conduct that is "comparable" to the religious gatherings Freed seeks to hold, it is neutral on its face and in operation. *Stormans II*, 794 F.3d at 1079.

### b.    The Proclamation is generally applicable

For many of the same reasons that the Proclamation is neutral, it is also generally applicable. The "question of general applicability addresses whether a law treats religious observers unequally," such as "'when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation.'" *Parents for Privacy*, 949 F.3d at 1235 (quoting *Lukumi*, 508 U.S. at 542–43). The prototypical religious "gerrymander" came in *Lukumi*, in which a city adopted ordinances to bar ritual animal sacrifice that contained so many exemptions for secular animal killing that the burdens, "in practical terms, falls on Santeria adherents but almost no others." 508 U.S. at 536.

The Proclamation could hardly be more different. By temporarily requiring all residents to remain isolated at home, except for a limited subset of essential activities, the Proclamation

---

[16] Wash. Gov. Jay Inslee, *Inslee announces easing of outdoor restrictions*, Apr. 27, 2020, https://www.governor.wa.gov/news-media/inslee-announces-easing-outdoor-restrictions.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

affects all Washingtonians—many in profound and painful ways. But these hardships are shared ones, dispersed widely across our state without regard to religion or creed. To be sure, certain groups and individuals experience the Proclamation's restrictions more acutely—including persons with disabilities, parents with small children, caregivers, seniors, and many others. But the Proclamation does not burden those who wish to gather for religious purposes any more than those who seek comparable secular fellowship. Because the Proclamation does not subject "religious observers" to "unequal treatment," it is generally applicable under the Free Exercise Clause. *Lukumi*, 508 U.S. at 542 (quotation marks and citation omitted).

Freed's only contrary argument is to again point to the "exceptions" to the "total ban on gathering." Dkt. 9-1 at 12. As explained above, his argument is unavailing. *See supra* at 14–16. *See, e.g.*, *Gish*, 2020 WL 1979970, at *6 ("Because the Orders treat in-person religious gatherings the same as they treat secular in-person communal activities, they are generally applicable."); *Legacy Church*, 2020 WL 1905586, at *34 (state "may distinguish between certain classes of activity, grouping religious gatherings in with a host of secular conduct, to achieve . . . a balance between maintaining community needs and protecting public health"). Because the Proclamation's exemptions for essential activities and businesses are limited and wholly dissimilar from in-person religious worship, it is a law of general applicability.

### c.   The Proclamation is rationally related to a legitimate state purpose

Because the Proclamation is neutral and generally applicable, "rational basis review" applies. *Stormans II*, 794 F.3d at 1084. Under this liberal standard, the Court "must uphold the rules if they are rationally related to a legitimate governmental purpose." *Id.* Freed does not contend either that slowing the spread of COVID-19 is illegitimate or that the Proclamation is unrelated to that public health objective. Nor could he, for each proposition is almost self-evident. Protecting public health from a highly contagious pandemic that has already infected 15,000 Washingtonians is not only a "legitimate" governmental purpose, but a compelling one. *See, e.g.*, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 438 (2006)

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

(recognizing state's interest in "promoting public health and safety"). And the social distancing strategy that the Proclamation implements is, by all scientific accounts, rationally related to that goal. *See* Lofy Decl. ¶¶ 15, 18. The Proclamation easily survives rational basis review.

### d.   Even if strict scrutiny applied, the Proclamation would meet it

Although rational basis review is the correct standard, the Proclamation would also meet strict scrutiny, particularly given its temporary nature and the dire state and national emergency to which this pandemic has given rise. More than a century ago, the Supreme Court recognized that "[i]n every well-ordered society . . . the rights of the individual . . . may at time[s] . . . of great dangers . . . be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." *Jacobson*, 197 U.S. at 29. This is one such time.

To meet strict scrutiny under the Free Exercise Clause, a law "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 531–32. The Proclamation satisfies both requirements in this emergency. First, it is undeniable—and, it appears, undisputed—that slowing the spread of COVID-19 is a compelling state interest. *Cf.* Dkt. 9-1 at 12 (arguing that Proclamation is not narrowly tailored but forgoing argument on compelling interests at stake). As the *Legacy Church* court recognized in denying a TRO against New Mexico's stay-home order, mitigating "a global pandemic and its local outbreak amount to a compelling state interest." 2020 WL 1905586, at *40; *see also Whitlow v. California*, 203 F. Supp. 3d 1079, 1089-90 (S.D. Cal. 2016) (government's interest in fighting spread of contagious disease is compelling; collecting cases).

Second, the Proclamation is narrowly tailored to slow COVID-19's spread. The narrow tailoring inquiry asks whether a law is significantly (1) "underinclusive," such that the state's "objectives are not pursued with respect to analogous . . . conduct," or (2) "overbroad," such that the state's "interests could be achieved by narrower [measures] that burden[] religion to a far lesser degree." *Lukumi*, 508 U.S. at 546. As explained above, *see supra* at 14–16, the

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Proclamation is not "underinclusive" because it does not exempt substantial "substantial, *comparable* secular conduct." *Stormans II*, 794 F.3d at 1079 (emphasis added).

Nor is the Proclamation overinclusive. While it is certainly sweeping in a practical sense, the Proclamation is not constitutionally "overbroad" because the state's interest in flattening the curve of COVID-19's spread could not be achieved through less stringent measures. *See* Lofy Decl. ¶ 18. As the Pennsylvania Supreme Court has noted, strict social distancing is not just one method "to suppress transmission of the disease," it is "currently the only mitigation tool." *Friends of DeVito*, 2020 WL 1847100, at *13. Exempting religious gatherings altogether would inevitably result in more infections, more hospitalizations, more intubations, and more deaths— including through such "super-spreader" outbreaks that have already stricken religious gatherings in this state and elsewhere. As Dr. Lofy testifies, even exempting only smaller spiritual events could weaken mitigation efforts because (1) small gatherings "typically involve prolonged face-to-face contact and therefore increase the risk of transmission"; and (2) allowing exceptions based on gatherers' "subjective purpose," as against a "clear, categorical prohibition on all gatherings, . . . would be difficult if not impossible . . . to enforce." Lofy Decl. ¶ 18.

This unprecedented pandemic calls for drastic, temporary measures to slow its spread. The Proclamation is just that. Its broad sweep is not a constitutional vice but a virtue—a sign of its general applicability as well as a necessary feature to facilitate widespread compliance and, ultimately, save lives. *See Jacobson*, 197 U.S. at 25 (citing "the authority of a state to enact quarantine laws and 'health laws of every description'") (quotation marks omitted); *see, e.g.*, *Maryville Baptist*, 2020 WL 1909616, at *3 ("Given that COVID-19 is widely understood to be transmitted through person-to-person contact, including persons with and without symptoms of illness, . . . restricting large in-person gatherings is [likely] the least restrictive means of accomplishing the Commonwealth's objective"). If ever deference is owed to the judgment of state officials and health experts, it is during this public health emergency. *See, e.g.*, *Jacobson*, 197 U.S. at 30 ("It is no part of the function of a court . . . to determine which one of two modes

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

was likely to be the most effective for the protection of the public against disease."); *see also On Fire Christian Ctr., Inc. v. Fischer*, No. 3:20-CV-264-JRW, 2020 WL 1820249, at \*8 (W.D. Ky. Apr. 11, 2020) (rejecting proposition that "the rules of the road in constitutional law remain rigidly fixed in the time of a national emergency").[17] In sum, even if strict scrutiny applied (which it does not), the Proclamation would withstand it because it is narrowly tailored to promote the state's compelling interest in preventing the spread of COVID-19. *See, e.g.*, *Legacy Church*, 2020 WL 1905586, at \*38 (stay-home order would meet strict scrutiny if it applied).

### 3.    The Proclamation does not infringe Freed's freedom of speech

Freed is not likely to succeed on the merits of his undeveloped free speech claim, for multiple reasons. As an initial matter, the Proclamation is not a restriction on speech at all. It "does not in any respect limit [Freed's] ability to speak," it "only forecloses" doing so in "physical" groups. *Friends of DeVito*, 2020 WL 1847100, at \*24. Moreover, even if Freed's speech were restricted, the Proclamation is a valid "time, place, and manner" regulation because it is (1) "content-neutral"; (2) "designed to serve a substantial governmental interest," and (3) "do[es] not unreasonably limit alternative avenues of communication." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986) (quotation marks omitted).

First, the Proclamation is content neutral because it "serves purposes unrelated to the content of expression," namely to combat a pandemic. *Ward v. Rock Against Racism*, 491 U.S.

---

[17] In *On Fire Christian Center, Inc.*, the court entered a TRO against a city's ban on drive-in religious services. 2020 WL 1820249, at \*4. The court found the ban likely underinclusive and overbroad because the city allowed drive-in secular businesses (such as liquor stores), and its interest in slowing COVID-19's spread would be as well achieved if churchgoers remained in their cars with windows closed or cracked. *Id.* at \*7. This case is easily distinguishable because drive-in religious services are permitted under the Proclamation, *supra* note 10, and Freed cannot identify substantial secular activity the Proclamation permits that is "comparable" to the in-person Bible study gatherings he wishes to conduct. *See Stormans II*, 794 F.3d at 1079. For the same reasons, it is easy to distinguish the Sixth Circuit's entry of a narrow injunction pending appeal against Kentucky's prohibition on drive-in religious services. *Maryville Baptist*, 2020 WL 2111316, at \*5. Washington permits drive-in religious services and treats a far narrower subset of businesses as essential than does the Kentucky, which "permit[s] uninterrupted functioning of 'typical office environments' . . . includ[ing] business meetings," "accountants," and "law firms." *Id.* at \*2, \*4, \*3. Finally, *First Baptist v. Kelly*, No. 20-1102-JWB, 2020 WL 1910021, at \*2 (D. Kan. Apr. 18, 2020), is similarly distinguishable, as Kansas's stay-home order "singled out" churches for stricter treatment than comparable secular businesses, including "libraries," "bars," "office spaces," and "shopping malls and other retail[] establishments where large numbers of people are present." None of those businesses is exempted in Washington.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

781, 791 (1989) ("The government's purpose is the controlling consideration."). Second, that purpose, as explained above, *see supra* at 18–19, is unquestionably a "substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 799 (internal quotation marks and citation omitted). Third, the Proclamation leaves ample alternative channels for his Bible study, including by telephone or video-conference. Freed is actively availing himself of one such alternative channel by "conduct[ing] the Bible study online," Dkt. 1 ¶ 18, and "will continue to attempt to offer virtual gatherings," Dkt. 9-1 at 7. *See Friends of DeVito*, 2020 WL 1847100, at *24 (governor's closure of businesses to halt spread of COVID-19 does not unconstitutionally infringe free speech because it "does not in any respect prohibit operations by telephone, video-conferencing, or on-line through websites and otherwise.").[18]

### 4.    The Proclamation does not infringe Freed's freedom of assembly

For the very reasons Freed's free speech claim fails, Freed is also unlikely to succeed on the merits of his assembly claim. The same time, place, and manner standards apply to assembly claims. *See, e.g., McCullen v. Coakley*, 573 U.S. 464, 476 (2014). As explained in the preceding subsection, the Proclamation is content neutral, justified by a substantial government interest, and allows alternative methods to assemble, so it is constitutional under the Assembly Clause.

Freed contends that the Proclamation is not "narrowly tailored" because "less restrictive alternatives . . . are clearly possible." Dkt. 9-1 at 14. This argument misapprehends the meaning of "narrow tailoring" in the First Amendment context. To be narrowly tailored to achieve a legitimate state interest, a regulation "need not be the least restrictive or least intrusive means of doing so." *Ward*, 491 U.S. at 798. Rather, a law is narrowly tailored "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest." *Id.* at

---

[18] Freed's unsupported argument that the Proclamation somehow permits "unfettered discretion in enforcement," Dkt. 9-1 at 13, is belied by the precise language of both the stay-home order and the Essential Workers list, which "provide sufficient guidance to state and local officials regarding what kinds of gatherings are permitted and what kinds of gatherings are prohibited." *Lighthouse Fellowship Church*, 2020 WL 2110416 at 27.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

800. Preventing people from assembling is currently the best way to prevent contagion, Lofy Decl. ¶ 15, so the Proclamation is narrowly tailored to meet a substantial government interest.[19]

### 5.   The Proclamation is Constitutional Under *Jacobson v. Massachusetts*

Freed is unlikely to succeed on any claim based on the straightforward application of traditional constitutional standards. In a state of emergency such as this, however, the state's interests in protecting its residents' health and safety are at their apex, tipping the constitutional scale in its favor. Thus, some federal courts have applied a more deferential constitutional framework in adjudicating constitutional claims arising out of COVID-19 stay-home orders. Derived from *Jacobson*, that framework provides that "a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *In re Abbott*, 954 F.3d 772, 784–85 (5th Cir. 2020) (quoting *Jacobson*, 197 U.S. at 31); *accord Gish*, 2020 WL 1979970, at *4–5.

Because Freed's claims fail under the traditional First Amendment standards, the Governor submits that it is unnecessary for this Court to apply the *Jacobson* framework. Should the Court disagree, however, and find Freed likely to prevail on one or more claims, *Jacobson* comes into play and compels denial of Freed's TRO. The Proclamation is an emergency measure that bears a "real or substantial relation" to the COVID-19 public health crisis and is not "beyond all question, a plain, palpable invasion of rights." *Jacobson*, 197 U.S. at 31; *see also Abbott*, 954 F.3d at 787 ("Faced with exponential growth of COVID-19 cases, states have . . . banned social gatherings, . . . *prohibited churches from holding public worship services*, and locked down

---

[19] Freed does not contend that his Bible study is "expressive conduct," but even if he did, the claim would be unlikely to succeed. The First Amendment permits regulation of expressive conduct if it "is within the constitutional power of the Government; . . . furthers an important or substantial governmental interest . . . unrelated to the suppression of free expression; and . . . the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968). For the reasons explained in this subsection, the Proclamation meets this test.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

entire cities. These measures would be constitutionally intolerable in ordinary times, but are recognized as appropriate and even necessary responses to the present crisis.") (emphasis added).

Thus, whether viewed under the traditional standards or *Jacobson*'s lens, Freed has failed to carry his heavy burden to show that he is likely to prevail on the merits of any claim. On this basis alone, his TRO motion should be denied. *See, e.g.*, *Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys., Inc.*, 180 F.3d 1072, 1081 (9th Cir. 1999) (where plaintiff unlikely to prevail, court "need not consider . . . balance of hardships or . . . irreparable harm" requirements).

## C.    Without a TRO, Freed Would Not Suffer Irreparable Harm

Freed's TRO motion should also be denied because he cannot establish the "irreparable harm" requirement. *See Winter*, 555 U.S. at 20 (plaintiff "must establish that . . . he is likely to suffer irreparable harm."). First, Freed is likely already permitted under the Proclamation to do exactly what he asks this Court to order. Freed wishes to meet with "one visitor at a time and one visit per day, with PPE worn" for Bible study. Dkt. 9-1 at 12. Based on the Complaint— including Freed's background as a licensed counselor—he appears to view such "ministry" a form of religious counseling, which is considered essential under the Proclamation. Dkt. 1 ¶ 6. As the Governor has explained in guidance and confirmed by proclamation, in-person counseling is permitted if remote counseling is not possible and CDC social distancing and sanitization practices are followed. Postman Decl. ¶ 18.b, Ex. 14. Freed attests that he is "deeply committed" to such precautions, Dkt. 9-2 ¶ 3, so there seems to be no reason why his one-on-one Bible study sessions must cease, assuming Freed considers them a form of religious counseling.[20]

To the extent Freed seeks broader relief, he still remains unlikely to suffer irreparable harm. Nothing prevents him from conducting his Bible study sessions online, and he plans to

---

[20] Freed says he is "committed to . . . guidelines issued by the CDC for community and faith-based organizations." Dkt. 9-1 at 15. But those very guidelines specify that the only potential mitigation strategy amidst substantial levels of community transmission—as in King County, *see* King Cty., Coronavirus Disease 2019 (COVID-19), https://kingcounty.gov/depts/health/covid-19.aspx—is to "[c]ancel community and faith-based gatherings of any size." *Implementation of Mitigation Strategies for Communities with Local COVID-19 Transmission*, at 7, https://www.cdc.gov/coronavirus/2019-ncov/downloads/community-mitigation-strategy.pdf.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

continue to do so. Dkt. 1 ¶ 18; Dkt. 9-1 at 7. A plaintiff is not irreparably harmed where there are "ample alternative[s]" in which to exercise "First Amendment rights." *See, e.g.*, *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1221–22 (D. Utah 2004), *aff'd,* 425 F.3d 1249 (10th Cir. 2005) (citing *Hale v. Dep't of Energy*, 806 F.2d 910, 918 (9th Cir. 1986) ("The First Amendment does not guarantee an optimal setting . . . at all times and places.")).

**D.      The Balance of Equities and Public Interest Weigh Against a TRO**

Finally, the balance of equities and public interest weigh strongly in the Governor's favor. A potential escalation of COVID-19 cases is a significant harm. *Legacy Church*, 2020 WL 1905586, at *43. Loosening the Proclamation's precautions prematurely could cause the COVID-19 outbreak to spike again. Lofy Decl. ¶ 18.[21] Washington's more than seven million residents have a strong interest in mitigating the virus's spread. The Proclamation provides neutral, generally applicable, and temporary measures to do so. Though Freed proposes voluntary measures he would employ to minimize the risk of spread, Dkt. 9-1 at 16, any gathering involving "prolonged face-to-face contact" increases the risk of community spread. Lofy Decl. ¶ 18. While Freed and his guests "may decide that meeting their spiritual needs warrant accepting the risk . . . it is a very different matter for them to argue that members of the public should accept risks to their own lives, and those of their family members, arising from others' exercise of their religion." *First Pentecostal*, 2020 WL 1978381, at *2. During this public health emergency, when the Governor must establish uniform standards to protect our state, self-regulation—where "every citizen . . . become[s] a law unto himself"— is neither a workable nor a responsible approach. *Smith*, 494 U.S. at 879 (quotation marks and citation omitted).

**IV.      CONCLUSION**

The Governor respectfully requests that the Court deny Freed's Motion for a TRO.

---

[21] Indeed, new University of Washington modeling projects more than double the previously predicted U.S. death toll to reflect the "easing of social distancing measures expected in 31 states by May 11." Inst. for Health Metrics & Eval, *New IHME Forecast Projects Nearly 135,000 COVID-19 Deaths in US*, May 4, 2020, http://www.healthdata.org/news-release/new-ihme-forecast-projects-nearly-135000-covid-19-deaths-us.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1

DATED this 5th day of May 2020.

2

ROBERT W. FERGUSON
Attorney General

3

4

*s/ Zachary Pekelis Jones*

ZACHARY PEKELIS JONES, WSBA No. 44557

5

  Assistant Attorney General
  Complex Litigation Division

6

JEFFREY T. EVEN, WSBA No. 20367
PAUL M. WEIDEMAN, WSBA No. 42254

7

  Deputy Solicitors General

8

800 Fifth Avenue, Suite 2000
Seattle, WA  98104

9

(206) 474-7744

10

(360) 586-0728
(360) 753-7085

11

zach.jones@atg.wa.gov

12

jeffrey.even@atg.wa.gov
paul.weideman@atg.wa.gov

13

*Attorneys for Defendant Jay Inslee,*

14

*Governor of Washington*

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

25